NOT DESIGNATED FOR PUBLICATION

No. 124,688

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TYLER ROBERT TREGELLAS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; JEAN M. SCHMIDT, judge. Opinion filed January 20, 2023. Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*Jodi Litfin*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ISHERWOOD, P.J., ATCHESON, J., and TIMOTHY G. LAHEY, S.J.

PER CURIAM: Tyler Robert Tregellas damaged his neighbor's car and was convicted of criminal damage to property. He was ordered to pay restitution in the amount of $6,967 as part of his sentence. In this appeal, Tregellas contends the district court abused its discretion by ordering restitution. Finding no merit in Tregellas' claim, we affirm the district court.

FACTUAL AND PROCEDURAL BACKGROUND

This restitution challenge arises from Tregellas' conviction, entered by a no-contest plea, to misdemeanor criminal damage to property. Tregellas suffered a

1

"psychotic break" during which he damaged a 2011 Camaro, belonging to his neighbor Lamar Tabb, by smashing in the car's moon roof and denting the hood and top of the car.

The district court held a restitution and sentencing hearing in which Tabb was the only witness. Tabb described the damage caused to his car by Tregellas. Tabb took his car to Briggs Auto Body Shop and obtained an estimate for $6,796 to repair the damage to his car. He could not afford the full amount of the repair, but he used his savings to pay $1,123.15 to do the minimum repair to the moon roof so he could drive the car during the winter months. Tabb said he purchased the car for $12,000 less than six months before the damage was done, and Tabb testified he believed it was worth around $5,000 in its present condition. Tabb testified he contacted his insurance company after the damage occurred, and the insurance company told him to obtain the Briggs repair estimate. But the insurance company would not cover the damage because Tabb apparently did not have coverage until after the incident. Tabb also missed one day of work, resulting in $171.20 of lost income. The total restitution requested by the State was $6,967.20. Tregellas presented no evidence at the hearing. At the conclusion of the evidence, Tregellas' counsel expressed concern the proof was based only on the victim's testimony and the Briggs estimate, and she contended that the restitution statute only contemplates an award for out-of-pocket expenses actually paid.

Before imposing restitution, the district court asked if Tregellas was working, and he told the court he was working full-time at Reser's Fine Foods but that he had applied for Social Security disability. He expected he would have a significant drop in income when he began receiving disability. No further information was solicited or presented about the amount of Tregellas' earnings or living expenses. After the district court ordered restitution, Tregellas' attorney informed the court she wished to make an argument that restitution was unworkable. Counsel told the court that Tregellas could not afford to pay the restitution and that Tregellas' income would drop significantly in the event his application for disability was approved. The district court suggested Tregellas

could seek a downward adjustment in the event of a significant change in income. And the district court encouraged Tabb to go to the Kansas Department of Insurance to see if it could negotiate a settlement with his insurance company. In the event that a settlement was reached, the district court told Tabb to report it to the district attorney's office and the clerk of the district court so that Tregellas' restitution could be reduced.

At the conclusion of the discussion, the district court reaffirmed that Tregellas owed $6,967 in restitution and sentenced him to three months in the Shawnee County Jail, but suspended his sentence and placed him on unsupervised probation for six months. Tregellas' attorney asked if there was a time that Tregellas must pay the restitution, and the district court replied it was to be paid through the course of probation and noted that Tregellas could ask for an extension. The district court's journal entry was filed on November 16, 2021.

Tregellas appeals the district court's order of restitution.

ANALYSIS

Tregellas argues that the district court abused its discretion because there was insufficient evidence to support the restitution amount and that restitution should not have been ordered because it was unworkable.

This court reviews the district court's order of restitution—as to the amount and if payment is workable—for an abuse of discretion. *State v. Tucker*, 311 Kan. 565, 566, 465 P.3d 173 (2020). A district court abuses its discretion when "no reasonable person would agree with [its] decision or if [its] decision is based on an error of law or fact." *State v. Meeks*, 307 Kan. 813, 816, 415 P.3d 400 (2018).

3

*The district court had sufficient evidence to order restitution.*

Tregellas admits that he damaged Tabb's car. But he argues that the State presented no evidence to support the amount of restitution the district court ordered—$6,967—beyond Tabb's testimony about the cost to repair his car. Tregellas contends "there were no documents, pictures, or any proof," and no "hard evidence" sufficient to enable the district court to make the restitution finding. Tregellas complains that Tabb "could have named any amount of restitution, because the Court required zero documentation to support the amount of restitution claimed." Tregellas also notes he was convicted of criminal damage to property of $1,000 or less, K.S.A. 2021 Supp. 21-5813(a)(1) and (c)(3), suggesting that restitution should not exceed that amount.

Our Supreme Court has stated that "'[a]lthough the rigidness and proof of value that lies in a civil damage suit does not apply in a criminal case, the court's determination of restitution must be based on reliable evidence which yields a defensible restitution figure.'" *State v. Hunziker*, 274 Kan. 655, 663, 56 P.3d 202 (2002) (quoting *State v. Casto*, 22 Kan. App. 2d 152, 154, 912 P.2d 772 [1996]). Evidence must also establish a causal connection between the property loss and the defendant's crime. *State v. Hall*, 297 Kan. 709, 713-14, 304 P.3d 677 (2013). Under Kansas law, fair market value is a standard metric for determining the amount of restitution owed. 297 Kan. at 713. But if damaged property is restorable, restitution should equal the reasonable cost of repairs plus compensation for the loss of its use not to exceed the reasonable market value of the property immediately before the crime occurred. *State v. Phillips*, 45 Kan. App. 2d 788, 795, 253 P.3d 372 (2011). There is no precise definition of what constitutes reliable evidence for purposes of determining restitution, there is "no hard and fast measure for setting the value" of a victim's loss. *Hall*, 297 Kan. at 712. The measure of restitution to be ordered is the amount that reimburses the victim for the actual loss suffered. *Hunziker*, 274 Kan. at 664.

Tabb testified under oath, and without objection, to the damage estimate provided by Briggs. There was no suggestion before the district court through cross-examination, or otherwise, that Tabb made up the estimate or that it was not based on the damages caused by Tregellas. The district court was in the best position to evaluate the credibility of Tabb's testimony and to determine the weight and credit to give the testimony. See *Peterson v. Ferrell*, 302 Kan. 99, 106-07, 349 P.3d 1269 (2015) (appellate courts do not pass on witness credibility or reweigh evidence). In addition to the Briggs estimate, Tabb testified that he had recently purchased the car for $12,000, and he believed its value after the damage to be $5,000, which would place his loss at $7,000. This figure is consistent with the repair estimate. Tregellas' argument there was a lack of proof justifying the district court's restitution order is unpersuasive.

Tregellas' suggestion that the restitution amount cannot exceed the statutory limit of the crime for which he was convicted—here, criminal damage to property less than $1,000—is likewise unpersuasive. And Tregellas cites no authority in support of this contention. K.S.A. 2021 Supp. 21-6604(b)(1) mandates that restitution include "damage or loss caused by the defendant's crime." Additionally, for a conviction of criminal damage to property under K.S.A. 2021 Supp. 21-5813, K.S.A. 2021 Supp. 21-6604(b)(1) requires that damage "shall include the cost of repair" of the damaged property. Succinctly stated, restitution is determined by the level of damage caused by the crime, not by the severity level of the crime. See *State v. Stuart*, No. 120,330, 2019 WL 4725280, at *4 (Kan. App. 2019) (unpublished opinion) (affirming a district court's restitution order of $2,577.56 for a conviction of criminal damage to property in the amount less than $1,000 under K.S.A. 2018 Supp. 21-5813[c][3]).

The victim's testimony provides reliable evidence which yields a defensible restitution figure in this case. The district court found Tabb credible, and his testimony supports the district court's order of restitution. We are unable to conclude that no reasonable person would agree with the district court or that the court made a mistake of

law or fact. Thus, we find district court did not abuse its discretion in ordering restitution based on Tabb's testimony.

*There was no compelling evidence that restitution was unworkable.*

Tregellas argues that the district court ordered unworkable restitution for three reasons: (1) because Tregellas cannot afford it, (2) because the district court failed to inquire into Tregellas' finances to determine whether restitution was workable, and (3) because the district court ordered an ambiguous sentence by not specifying a period by which restitution must be paid.

K.S.A. 2021 Supp. 21-6604(b)(1) provides that once a district court determines a restitution amount, that amount is due immediately unless "(A) [t]he court orders that the defendant be given a specified time to pay or be allowed to pay in specified installments; or (B) the court finds compelling circumstances that would render restitution unworkable, either in whole or in part."

K.S.A. 2021 Supp. 21-6604(b)(1) does not define unworkable, and "unworkability should be evaluated on a case-by-case basis." *Meeks*, 307 Kan. at 820. Factors that courts should consider when determining whether restitution is unworkable include "the defendant's income, present and future earning capacity, living expenses, debts and financial obligations, and dependents." 307 Kan. at 820. And in some cases, such as when probation will continue until a defendant pays the restitution in full, a court should consider how long it will take to complete restitution payments. 307 Kan. at 820.

Significantly, the person challenging restitution must present evidence of "compelling circumstances" that render the restitution plan unworkable. *State v. Shank*, 304 Kan. 89, 95, 369 P.3d 322 (2016). To meet this burden, the person must come forth with evidence that they are unable to pay restitution. *Tucker*, 311 Kan. at 567.

6

Tregellas claims the district court shouldered the responsibility of initiating discussion about how much he earned from his job, his debts, financial obligations, and expenses before ordering restitution. But the responsibility of challenging the workability of a restitution plan lies with the defendant and not with the court ordering restitution. *Shank*, 304 Kan. at 95. This is because "[r]estitution is the rule and a finding that restitution is unworkable is the exception." *State v. Holt*, 305 Kan. 839, 842, 390 P.3d 1 (2017). Tregellas simply did not provide the district court with any evidence that would allow it to find restitution unworkable. Tregellas broadly stated he could not afford restitution but lacked any specifics about his ability to pay or how much money he would have after paying restitution. He offered no evidence about the amount of his full-time earnings, his basic living expenses, or his other financial obligations. Although Tregellas stated he would have a reduced income if he transitioned from his full-time job to disability, he had only applied at the time of sentencing and had no confirmation that he was accepted. The district court did not abuse its discretion by failing to ask the questions Tregellas now proposes.

Finally, as part of his argument about the unworkability of restitution, Tregellas argues that the district court abused its discretion by failing to pronounce the time period that restitution was to be paid, rendering his sentence ambiguous. We disagree. The record reflects the district court ordered payment of restitution over the course of Tregellas' six months of probation. Tregellas plainly recognizes this fact because he argued that the court's restitution order required him to pay $1,200 per month, an amount he alleged he could not afford.

But even if a district court does not order a specific repayment plan, the sentence is not rendered ambiguous because the district court is not obligated to state when restitution is due. *State v. Alderson*, 299 Kan. 148, 151, 322 P.3d 364 (2014); *State v. Garza*, No. 118,840, 2019 WL 1412444, at *5 (Kan. App. 2019) (unpublished opinion)

7

(holding it was not an ambiguous sentence for district court to order restitution without specifying when it was due because K.S.A. 2017 Supp. 21-6604(b) did not require it to). By statute, if the district court had not specified a time period for repayment, restitution would be due immediately. K.S.A. 2021 Supp. 21-6604(b)(1). Nothing about the district court's order is ambiguous.

We find the district court did not abuse its discretion by ordering Tregellas to pay $6,967 in restitution.

Affirmed.